*131 OPINION of the Court, by
Judge W all ace.
This is a contest for land ; and as M’Gee was complainant in the court below, his claim will be first investigated. He relies on the following entry, of which he purchased 500 acres. “ May 20th, 1780, Robert M’Afee enters 600 acres upon a treasury warrant, adjoining; Tohn , r . J , ’ 0 r , Gee s pre-emption on Salt river, on the east side, Before going into a particular consideration of this entry, it is deemed necessary to make some general obser-rations. It appears, that on the 26th day of October 1779, certificates were obtained from the commissioners for the following claims, on which the entry just recited, immediately or ultimately depends. John M’Gee, a pre-emption for an improvement, of 1000 acres. Samuel M’Afee, a settlement of 400 acres, and a pre-emp- * * ' i % i tion appendant thereto of 1000 acres. James M/Afee, a settlement of 400 acres, and a pre-emption appendant *132 thereto of 1000 acres. John M’Coun, a settlement of 400 a’cres, and a pre-emption appendant thereto of 1000 acres. George M’Afee, a settlement of 400 acres, and a pre-emption appendant thereto of 1000 acres. And Samuel Adams, a pre-emption for an improvement, of 1000 acres. And there is abundant and satisfactory testlroony, that the situation of the claims and i mprove - ments of John M’Gee, Samuel Adams, Samuel M’Afee, and James M’Afee, were well known, to the generality those, w^° about that time, were conversant in their vicinity : from which it ought to be inferred, that Salt river, at least in that quarter, was equally well known. Indeed, the notoriety of that lengthy watercourse, must be presumed. Therefore the objection which has been urged, that in none of the locations or entries of those Gaims, the particular part oi Salt river is specified, cannot be regarded ; because it must be presumed, that other locators would have made themselves acquainted wlth the neighborhood, before they attempted to appropriate any of the lands. It is further objected, that admitting any or all of these claims were well known, jn none of their locations, are tneir precise form J t , 7 t r . , and situation delineated ; nor can th^y be ascertained with certainty, by applying any of the established rules f construction to them. The fact is, that the only incontrovertible call in any of them, is the improvement Qf the claimant; the only other locative calls are for t’ne claims above and below them respectively, without shewing that those claims had been previously located and might have been found of record ; and when they recjprocaqv cali for each other, this may have been the case as to some of them, but could not have been so as to all. And it has been decided in the suit, Woods vs. patric¿ l many others, that a call for a claim not of record, cannot be sustained, lo avoid the consequence Qf this impropriety or defect, it has been urged, that the onty locative or special call in any of them, is to includs the improvement of the claimant; and that the other ealls ought only to be regarded as general description. This renders it indispensable, to advert to the manner in which the certificates issued by the commissioners for District of Kentucky are worded. On attentively perusing the commissioners’ books, it is found, that the style of their certificates is not uniform, nor perhaps as *133 correct as might have been adopted. When they first commenced their sessions, their certificates generally begin with stating the application of the claimant, together with his location or description of the land and the nature of his claim ; and then express, that the claimant had a right to the quantity he claimed, including his improvement. This form of beginning their certificates, with stating the application and location, was in the general continued until their powers expired; but they changed the form of the granting part, by expressing that the claimant had a right to his quantity of land, to include the above or foregoing location. This was undoubtedly more correct ; but the same, it is conceived, must be understood by all their certificates, to make them effectual. They had power to sustain or to reject a claim, but not to modify it without the express consent of the applicant. And there are numerous examples in their books, of their having rejected claims, which were not supported by satisfactory proof; or when they were contested by those who had paramount claims ; but not one instance is found, of changing the location of the claimant. And the claimants having obtained certificates from this tribunal, to which by law they had a right, and afterwards having expended their time and money, in acquiring possessions under them, it seems to be the duty oi all subsequent courts, to aid in accomplishing the purpose, by giving those certificates the most liberal construction, and by endeavoring to extract from them, as far as possible, what the law and the reason of the case required. And for these reasons, the expression, to include his im-In some instances, it may provement, ought not to be taken as a negation of the other parts of the location, but only as a repetition the most essential part of it so happen, that the call in a location for a neighbor»' claim, must from other calls therein, be taken as general description only; but adjoining a claim, or any other expression which is tantamount, ought to be taken as a special or locative call, of which the locator cannot be deprived, and consequently, by which he ought to be bound. To these observations it may not he amiss to subjoin, that from M’Gee’s bill, and from the depositions which have been taken to support his claim, it would eeeiji that he had great reliance, on his survey having *134 been made and become well known, for several years be-f°re a grant, on a survey not conformable to entry, had been obtained by Myers, for the pre-emption of which Thompson and James Ray are the assignees ; and even before the date of the entry in the name of John Sage, on which the claims of Lilland and Neall are founded, And ‘s truei that prior to the decision of the Supreme Federal Court, in the case oí Wilson vs. Mason, and the decision of this court, in the case of Patterson vs. Brad-a reliance of this kind, was thought by many to be substantial ¡ but in those decisions it is made evident, ⅛¾⅛ under our present land law, land cannot be appropriated by a survey, further than it is founded on, and corresponds with a valid entry. M’Gee also states in his bill, that Myers had caveated his survey, and by that means had unfairly obtained the elder grant for the land in contest. But entering a caveat, was certainly an exercise of a legal right, and therefore cannot produce an illegal injury; more especially, as M’Gee had also the same right to caveat the surveys that interfered with his claim, which he omitted to exercise. Keeping in mlncl these general observations, we will now proceed to consider the entry in contest which has been recited, and which calls for John M’Gee’s pre-emption on Salt river, on the east side. At first view, it may be thought doubtful, whether the expression, on the east side, applies to M’Gee’s pre-emption, or to Salt river. But it seems to this court, that the expression, on Salt river, ought to be considered as descriptive of M’Gee’s preemption, and as a part of the antecedent to which the expression, on the east side, was meant to refer, and may be thus transposed, to wit. adjoining on the east side of John M’Gee’s pre-emption on Salt river. If the east side of John M’Gee’s pre-emption was intended, let the form and situation of that claim be ascertained, and conformably to numerous decisions of this court, this entry ought to be surveyed in a square, and so that the centre of its most westwardly line, will be the centre of the most eastwardly line of the pre-emption. It is however, apprehended, that there will be great difficulty in adjusting the position of M’Gee’s pre-emption. Its entry with the surveyor is as follows : “ April 26th 1780, John M’Gee, enters Í009 acres, by virtue of a warrant for pre-emption, on both sides of Salt ri-
entry cal ling for a claim not of record Corted —Cited Woods vs. Patrick, Pr. Dec. ⅜
Commiffion ers' certificate, Rating the af ■ ««¿«TandYhé nature of the claim, and con-eluding with a grant of the right for the quantity, to include the lo-correct than to Include the ins-
same must be un derftood in all their certifi-them effeítuai. Courts ought to give «tufo eonftruction, and endeavor them1 whafthe law and the reafon of the
could reject, or sustain, but not without* ⅛* express consent of ⅛ cant . — Bryant-, aJ^ I9y and 20*9— pr. Dec- 17.
_To include the '“fXe'dore 'I negation of the otller Patta. but oni°yCaa're-petition of the most “s'ntl ¿jí/oi-’j bars, Pr. Dec. 246-7-
be appropriated by survey only-so far as ,has ^^,1^ to"a valid entry,— Patterson Bradford, Har. 104 — Wdson vs. Mason, 1 Cranch 45. Entering a caveat and there. by obtaining eldest grant> no cause of complaint--Patter-M.Json vs. Brad. Hu, 103
501pn'ensempJ; tiori, on Salt rlvsr> on the east vide ^hc pre emption. Entry o{ -0⅛ JOOO east side,’ be surveyed m ⅛! most eaftvrard- “ 600 acres to ly boundary of the aooo, to be the middle of vra'd™boundal ty of 600. _
Salrr Prlncl“ ¿and, ante 84— Craig vs.' ⅛-‘jZvhvs. Lock-tan, Han 368 Moore^ agrns r’ ec'
Location of a pre-emption siónersC°cannot aid or control «he entry with they areTcompared only to ascertain the dignity of the claim.
Acord. Bryant and 0<zvings •vs, IVailaUy Hugh, iio— Patterson vs, Bradford, Har. zo8 — M'Mil-¿en vs. Miller) Hard, 495-6. —Lillard vs, *l‘aylor's heirs, jPr. Dec. 248.
Entry, to lie between the lands of A. and M, construed to mean adjoining, by reason of the relative situation of improve-menis called for in all three claims.
A claim of A* and of M. being ihewn and no others^ thofe íhall be taken as intended.
Call for M’a land before hia pre-emption was located ft call for his fet-tlement onlyi Craig vs» Ma-v cbir ante >©.
Claim depending on M'a claim for northern boundary not suftained for want of identification of M’s claim. — » Vide Ñeah vs, Galloway,
Ver, between the land of Samuel M’Afee, and Samuel Adams, running eastwardly for quantity.” It is unnecessary to recite M’Gee’s location with the commissioners ; it having been repeatedly decided (a) by this court, that the location with the commissioners of a preemption, granted for making an improvement on the land, cannot be admitted to aid or control its entry with the surveyor ; as certificates for such pre-emptions, were not required to be recorded in his office, and the same land might not have been aimed at in both ; moreover, the entry with the surveyor was the last act of the owner, to the advantage of which he is entitled, and consequently, by which he must be bound. The entry with the surveyor, by departing in the whole, or in part, from the location with the commissioners, may so far reduce the dignity of the claim ; but in the present contest, the validity of the entry, and those on which it depends, is the only point to be settled. M’Gee does not call for his improvement in this entry; and if the call, between the land of Samuel M’Afee and Samuel Adams, is taken as general description only, then it does not specify any precise northern or southern boundary, and on that account is too vague to be supported. But this court is of opinion, that the expression, between, as here used, ought to be taken to mean the same as to adjoin : that is to say, to adjoin the land of Samuel M’Afee to the northward, and the land of Samuel Adams to the southward. And thus, it is conceived, other locators would have understood it, who had made themselves acquainted with the relative situations of the improvements on which those claims depend ; for M’Gee’s improvement is only about a mile and a quarter from Adams’s improvement, and about a mile and three quarters from Samuel M’Afee’s improvement. And it must be presumed, that the claims of Samuel M’Afee, and Samuel Adams, which are exhibited, were intended ; because it is not shewn that they had any other claims. And it appearing that Adams’s pre-emption was not entered with the surveyor until after M’Gee’s entry of his pre-emption with the surveyor was made ; it must be presumed, that Adams’s location of his preemption with the commissioners was intended. The certificate in which it is contained, is as follows; “ October 3§th, 1779, Samuel Adams this day *136 claimed, a right to a pre-emption of 1000 acres of land* lying on both sides of Salt river, joining John M’Gee’s land above, by improving the same in the year 1776¿ Satisfactory proof being made to the court, they are bf opinion that the said Adams is entitled to the pre-emption of 1000 acres, including the said improvement,” &c. If Adams’s certificate was first obtained, his call for M’Gee’s land is not precise, it not having then assumed a definite form ; and if M’Gee’s certificate was first obtained, his call for Adams’s land is not precise, it not having then assumed a definite form ; so that ill either way, the boundary of M’Gee’s pre-emption on that side, is left indefinite. As to the boundary of M’Gee’s pre-emption on the Opposite side, it is certified that the entry of Samuel M’Afee’s pre-emption had not been made, when M’Gee called for his land, which authorises the presumption, that his settlement was intended, and not his settlement and pre-emption in conjunction. His certificate from the commissioners is as follows : “ October 26 th, Í 779, Samuel M’Afee this day claimed a right to a settlement and pre-emption to a tract of land, lying on both sides of Salt river, joining James M’Afee’s land, by improving the said land, and raising a crop of corn at Boonsborough in the year 1775. Satisfactory proof being made to the court, they are of opinion, that the said Samuel M’Afee has a right to a settlement of 400 acres of land, including the said improvement, and the pre-emption of 1000 acres, adjoining,” &c. The location of this settlement, on account of the reciprocal calls in it, and in M’Gee’s location, is liable to an objection similar to the one just pointed out in Adams’s location, as is also the location of James M’Afee’s settlement, and those of James M’Coun and George M’ Afee. But could this objection be removed, yet the entry in question cannot be supported. M‘Gee‘s pre-emption boundary to the northward^ depends for precise situation, on Samuel M‘Afee‘s settlement, and Samuel M‘Afee‘s settlement depends on James M‘-Afee‘s settlement, and James M‘Afee‘s settlement depends on- James M‘Coun‘s settlement, and James M‘Coun‘s settlement depends on George M‘Áfee‘s settlement, and the situations of M‘Coun‘s and George M‘Afee‘s settlements are not even identified, which must be fatal to this entry ; because they ought all to be *137 tensidéned as component parts thereof. For until the northern and southern boundaries of M’G<-Vs pre-emption are known, and their respective courses ascertained, it cannot be determined with precision, what direction shall be given to its western boundary, nor how far to the eastward, or on what course it should extend ; and consequently, the precise form and situation of the last mentioned entry, cannot be determined. This court therefore approbates the decree of the court below, dismissing the complainant’s bill, with coses ; although it cannot embrace all the sentiments in the opinion by ivhich the decree is preceded. — —Decree affirmed.

 Bryant and Owings vs. Wallace, Hugh. 209— Patterson vs. Bradford, Hard, 103.